UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

NANCY MAFFIA,

                    Plaintiff,

v.                                                    Case No.  5:09-cv-184-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                    Defendant.
_____

## ORDER

    Plaintiff appeals to this Court from a final decision of the Commissioner of Social

Security (the "Commissioner") denying her disability insurance benefits.  (Doc. 1.)  The

Commissioner has answered (Doc. 12) and both parties have filed briefs outlining their

respective positions.  (Docs. 19 & 20.)  For the reasons discussed below, the

Commissioner's decision is due to be **AFFIRMED** under sentence four of 42 U.S.C.

§405(g).

## I.  PROCEDURAL HISTORY

    Plaintiff has filed three applications for disability insurance benefits and

Supplemental Security Income Benefits.  Plaintiff filed her first application for disability

insurance benefits and Supplemental Security Income Benefits on November 12, 2003,

alleging disability from October 26, 2003 ( the "2003 application").  (R. 47-49.)  The

2003 application was denied initially and upon reconsideration.  (R. 21-22, 32-34.)

Thereafter, Plaintiff timely pursued her administrative remedies available before the

Commissioner and requested a hearing before an Administrative Law Judge ("ALJ") on

February 18, 2004.  (R. 30.)  The ALJ conducted Plaintiff's administrative hearing on

August 8, 2005.  (R. 286.)  On October 27, 2005, the ALJ issued an unfavorable

decision.  (R. 12-20.)  The Appeals Council denied Plaintiff's request for review on

January 27, 2006.  (R. 4-8.)  Plaintiff then filed an appeal with this Court on February 7,

2006, and this Court affirmed the Commissioner's decision as to the 2003 application in

an Order entered on September 27, 2007 in case no. 5:06-cv-53-GRJ.  Plaintiff then

appealed this Court's decision in case no. 5:06-cv-53-GRJ to the Eleventh Circuit,

which on August 28, 2008 reversed this Court's Order and remanded the case to the

Commissioner for further proceedings.[1]  (R. 352-61.)

    The Eleventh Circuit remanded the case because it concluded that the ALJ had

failed to "make specific conclusions in support of his conclusion that Maffia could

perform the full range of sedentary weight."[2]  (R. 359.)  In support of this conclusion, the

Eleventh Circuit noted that the ALJ did not state with particularity the weight that he

gave to the different medical opinions presented by the two parties, and his rationale for

doing so, and that the ALJ had also mischaracterized several doctor's statements that

Plaintiff had no sitting restrictions imposed upon her by her impairments when several

of those medical opinions were actually to the contrary.  (R. 359-60.)  The Eleventh

Circuit also noted that the ALJ had made no finding as to whether Plaintiff's ability to sit

was impaired and, if so, how long she could sit during an eight hour workday.[3]  (R. 360.)

The Eleventh Circuit further noted that the ALJ had concluded that Plaintiff could

---

[1] Maffia v. Comm'r of Soc. Sec., 291 Fed. Appx. 261, 264-65 (11th Cir. 2008).

[2] Id. at 264.

[3] Id.

substantially perform all seven primary strength demands that sedentary work requires without analyzing whether the medical opinions in the record actually supported such a conclusion.[4]   (R. 359-60.)  Finally, the Eleventh Circuit noted that the ALJ's suggestion that only a government employer would permit Plaintiff to miss three days of work per month because of medical problems had no support in the record and was made without consulting a vocational expert ("VE").[5]  (R. 359-60.)

Plaintiff's second application for disability insurance benefits and Supplemental Security Income Benefits was filed on December 7, 2005, and also alleged a disability onset date of October 26, 2003 ( the "2005 application").  (R. 337.)  Plaintiff's 2005 application was denied initially on March 10, 2006 and upon reconsideration on November 14, 2006. (R. 337, 884-85, 889-90.)  Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner and requested a hearing before an Administrative Law Judge on November 29, 2006.  (R. 337.)  The ALJ conducted Plaintiff's administrative hearing on October 11, 2007.  (R. 337.)  On November 7, 2007, the ALJ issued an unfavorable decision. (R. 337-50.) The ALJ noted that Plaintiff's 2003 application had been denied by an ALJ on October 27, 2005 and was then pending in the Eleventh Circuit Court of Appeals.  (R. 337-38.)  Accordingly, the ALJ only considered Plaintiff's alleged disability from the time period after the October 27, 2005 decision through November 2, 2007. (R. 338.) The Appeals Council denied Plaintiff's request for review on September 4, 2008.  (R. 363.)  Plaintiff

---

[4] Id.

[5] Id.

3

then filed a complaint seeking review of the ALJ's denial of the 2005 application in this Court on September 29, 2008 in case no. 5:08-cv-417-GRJ.

Plaintiff filed a third application for disability insurance benefits and Supplemental Security Income Benefits on May 27, 2008, again alleging a disability onset date of October 26, 2003 ( the "2008 application").  (R. 317.)  The third application was denied on August 19, 2008.  (R. 385.)  The ALJ conducted a hearing on December 3, 2008 on both the 2003 application and the 2008 application, which the ALJ noted he was consolidating with the 2003 application, pursuant to the remand by the Eleventh Circuit. (R. 897-936.)  The ALJ denied both applications in a decision dated February 23, 2009. (R. 317-31.)  In that decision, the ALJ stated that the issue being decided at the December 3, 2008 hearing was whether Plaintiff was disabled "from October 26, 2003, through October 27, 2005, and, from November 3, 2007 through to the present." (R. 317.)  On April 28, 2009, Plaintiff filed a complaint related to the consolidated 2003 and 2008 applications in this case.  (Doc. 1.)

Plaintiff requested the Court on April 2, 2009 to enter an order in case no. 5:08-cv-417-GRJ consolidating that case, relating to the 2005 application, and the instant case, which relates to the consolidated 2003 and 2008 applications. On July 6, 2009, this Court entered an Order in case no. 5:08-cv-417-GRJ denying Plaintiff's request to consolidate the instant action with her appeal related to the 2005 application also pending before this Court in case no. 5:08-cv-417-GRJ because each action involved distinct time periods.  (5:08-cv-417-GRJ Doc. 24.)  On March 26, 2010 this Court then entered an Order affirming the Commissioner's decision with respect to the 2005 application in case no. 5:08-cv-417-GRJ.  (5:08-cv-417-GRJ Doc. 29.)  Plaintiff has

4

appealed that Order to the Eleventh Circuit.  However, the matter of the ALJ's denial of

the 2003 and 2008 applications covering the period from October 26, 2003 through

October 27, 2005 and from November 3, 2007 through to the present, which Plaintiff

sought review of in her Complaint in the instant action, remains for this Court to

consider.  (Doc. 1).

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial

 evidence.[6] Substantial evidence is more than a scintilla, i.e., the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the

conclusion.[7]

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against

the Commissioner's decision.[8] The district court must view the evidence as a whole,

taking into account evidence favorable as well as unfavorable to the decision.[9]

However, the district court will reverse the Commissioner's decision on plenary review if

---

[6] See 42 U.S.C. § 405(g).

[7] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[8] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[9] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[10]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[11]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[12]

The ALJ must follow five steps in evaluating a claim of disability.[13]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[14] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[15] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[16] Fourth, if a claimant's impairments do not prevent her from doing past

---

[10] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[11] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[12] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[13] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[14] 20 C.F.R. § 404.1520(b).

[15] 20 C.F.R. § 404.1520(c).

[16] 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[17] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[18]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[19] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[20] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[21]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[22] In a situation where both exertional and non-exertional impairments are

---

[17] 20 C.F.R. § 404.1520(e).

[18] 20 C.F.R. § 404.1520(f).

[19] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[20] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[21] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[22] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[23]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[24] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[25] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[26]

## III. <u>SUMMARY OF THE RECORD EVIDENCE</u>

Plaintiff was forty eight (48) years old at the time of the ALJ's decision on February 23, 2009. (R. 328, 330.) She has the equivalent of a high school education[27] and has previous work experience as a cashier and as an automobile salesperson. (R. 52, 61, 87-93, 926-27.) Plaintiff contends that she has been unable to work since October 26, 2003 due to bulging discs in her neck and back, bilateral carpal tunnel syndrome, right foot pain, pelvic cysts, bipolar disorder, insomnia, and depression. (R. 51, 467, 483, 495, 518, 521, 534.)  Plaintiff is insured for benefits through December 31, 2008. (R. 318-19.)

---

[23] <u>Walker</u> at 1003.

[24] <u>Wolfe</u> at 1077-78.

[25] <u>See</u> <u>id</u>.

[26] <u>See</u> <u>Doughty</u> at 1278 n.2.

[27] Plaintiff obtained a General Equivalency Diploma (GED). (R. 90.)

In the ALJ's review of the record, including Plaintiff's testimony, medical records from several health care providers, and testimony from a vocational expert ("VE"), the ALJ determined that Plaintiff suffers from bilateral carpal tunnel syndrome, cervical spondylosis, chronic pelvic pain, obesity, pain status post right foot surgery for bunion and hammertoes, and an affective disorder. (R. 320.) While these impairments are severe, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations. (R. 320.) Specifically, the ALJ gave consideration to Plaintiff's physical impairments, particularly her abdominal ailments, asthma, cholecystitis, and hypertension, and mental disorders and found that the objective medical evidence failed to establish that Plaintiff met the criteria of Sections 1.00 (*Musculoskeletal System*), 11.00 (*Neurological*) and/or 12.00 (*Mental Disorders*) of the Listings of Impairments. (R. 324.)

The ALJ then found that Plaintiff retained the residual functional capacity ("RFC") to perform the exertional demands of the full range of sedentary work.  (R. 325.)  The ALJ limited Plaintiff to occasional climbing, balancing, stooping, kneeling, crouching and crawling.  (R. 325.) The ALJ further opined that Plaintiff should avoid concentrated exposure to hazardous machinery and unprotected heights.  (R. 325.)  The ALJ also noted that Plaintiff is limited by her inability to wear a shoe on her right foot.  (R. 325.) As for mental impairments, the ALJ found that Plaintiff has mild limitation in social functioning; mild restriction of activities of daily living; moderate difficulties in maintaining concentration, persistence, and pace; and no evidence of repeated episodes of decompensation. (R. 324.)  The ALJ agreed with the non-examining state

9

agency psychologist's opinion that Plaintiff "retained the ability to carry out instructions and relate to others in a routine work setting" and determined that Plaintiff "can understand, remember and carry out simple instructions" as part of making his RFC determination. (R. 325, 327.)

After finding that Plaintiff could not perform her past relevant work, the ALJ consulted a vocational expert ("VE").  Based on the VE's testimony, the ALJ found that Plaintiff was capable of performing work which exists in significant numbers in the national economy and, therefore, is not disabled. (R. 329.)

Plaintiff raises two issues in her appeal, both of which focus on the ALJ's consideration of the opinion of Michael Zelenka, Ph.D, a non-examining state agency psychologist. The Court will limit its discussion of the evidence of record accordingly.

On September 21, 2006, Dr. Zelenka, a state agency psychologist, reviewed Plaintiff's medical records and opined that Plaintiff had mild restriction of activities of daily living, mild difficulties maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace, and also noted that there was insufficient evidence concerning any extended episodes of decompensation. (R. 794.) In the "Summary Conclusions" portion[28] of the Mental Residual Functional Capacity Assessment ("MRFC") form that he completed at the request of the Social Security Administration, Dr. Zelenka checked the boxes for "Moderately Limited" with respect to two of the listed mental activities: Plaintiff's ability to maintain attention and

---

[28] One of the standard forms provided to state agency physicians by the Social Security Administration (and the one directly at issue in the instant matter) is entitled "Mental Residual Functional Capacity Assessment" and consists of three parts: Part I: Summary Conclusions, Part II: Remarks, and Part III: Functional Capacity Assessment.

concentration for extended periods as well as Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (R. 780-81.)  Taking his summary conclusions into consideration, Dr. Zelenka went on to render his assessment of Plaintiff's RFC, in which he concluded that "given some allowances for occasional prob[lem]s with attention and for occasional psychol[ogical] prob[lem]s affecting productivity, [Plaintiff] retains adequate mental ability to carry out instr[uctions] and to relate adequately to others in a routine work setting." (R. 782.)  As part of making this determination, Dr. Zelenka also noted that he believed that Plaintiff did indeed have bipolar disorder but that her symptoms were under "fair to good control."  (R. 782.)

## IV. **DISCUSSION**

Plaintiff raises two issues on appeal, both of which relate to the MRFC assessment completed by non-examining state agency psychologist Dr. Zelenka. Plaintiff's first contention is that the ALJ erred by ignoring Dr. Zelenka's opinion that Plaintiff had several limitations in the area of non-exertional impairments.  Secondly, Plaintiff contends that the ALJ erred by posing an incomplete hypothetical to the Ve which did not reflect the limitations that Dr. Zelenka had identified in his MRFC assessment.

**A.     The ALJ Properly Considered The Opinion of the State Agency Non-Examining Physician and Expressly Included that Opinion in his Determination of Plaintiff's RFC**

Plaintiff contends that the ALJ ignored the opinion expressed in the MRFC assessment performed by Dr. Zelenka, a non-examining state agency psychologist, and that the ALJ failed to provide any reasons for rejecting this evidence.  According to Plaintiff, Dr. Zelenka's assessment indicated that Plaintiff possessed moderate inability in two of the 18 functional areas that must be addressed when the severity of a claimant's non-exertional impairments are assessed by a non-examining state agency doctor or psychologist in order to determine the claimant's mental RFC.  The Plaintiff alleges that Dr. Zelenka's RFC assessment reflected Plaintiff's moderate inability to maintain attention and concentration for extended periods of time and  moderate inability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

The fundamental problem with Plaintiff's argument is that the ALJ relied upon and followed Dr. Zelenka's assessment.  In his assessment of Plaintiff's RFC, the ALJ stated:

> The undersigned is giving great weight to the State Agency psychologist's opinion in Exhibit 40F.  The psychologist expressed the opinion that the claimant's bipolar symptoms were under good control. The record showed she was able to drive, shop, and perform light household chores.  He opined that the claimant retained the ability to carry out instructions and relate to others in a routine work setting.  The undersigned finds that this opinion is consistent with the record as a whole and with the claimant's reported activities of daily living.

12

(R. 327.)  Although the ALJ does not specifically refer to Dr. Zelenka by name, it is obvious that the ALJ was referring to Dr. Zelenka's opinion because there were only two state agency examiners who assessed the impact of Plaintiff's mental problems on her ability to work[29] – and of the two, Dr. Zelenka is the only one who completed a "Mental Residual Functional Capacity" form.

The above quoted statement from the ALJ's opinion is consistent with Dr. Zelenka's opinion that, notwithstanding Plaintiff's problems with attention, concentration, and productivity that resulted from her psychological condition, Plaintiff was capable of carrying out instructions and relating adequately to others in a routine work setting. Thus, because the ALJ clearly considered Dr. Zelenka's opinion and, in fact, relied upon it in evaluating Plaintiff's RFC, Plaintiff's argument is without merit.

The other problem with Plaintiff's argument is that Plaintiff misinterprets the MRFC form.  The two boxes, which Dr. Zalenka checked noting moderate inability, are in Section I of the Mental Residual Functional Capacity Assessment, entitled "Summary Conclusions." Part I of the MRFC only contains summary conclusions and does not constitute the functional capacity assessment by the examiner.[30]  A claimant's actual mental RFC as determined by the non-examining state agency doctor or psychologist is instead recorded in Section III of the form.

---

[29] The other state agency physician, Dr. Suzanne Zoss, Ph.D., completed only the Psychiatry Review Technique, which is dated March 6, 2006, because she found Plaintiff to have no medically determinable mental impairments. (R. 721-34.)

[30] The form itself clearly states that Section I is to be used for "recording summary conclusions derived from the evidence in file" and that a "[d]etailed explanation of the degree of limitation for each category (A through D), as well as any other assessment information you deem appropriate, is to be recorded in Section III (Functional Capacity Assessment)." (R. 780.)

As the Commissioner points out, Section I of the form, as explained in the Program Operations Manual System, is "*merely a worksheet* to aid in deciding the presence and degree of the functional limitations and the adequacy of documentation and *does not constitute the RFC assessment*" by the non-examining state agency doctor or psychologist.[31]  Section III, on the other hand, is "for recording the mental RFC determination" and "[i]t is in this section that the *actual mental RFC assessment is recorded*, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings."[32]

Dr. Zelenka's determination as to Plaintiff's mental RFC, as expressed in Section III, was that "given some allowances for occasional prob[lem]s with attention and for occasional psychol[ogical] prob[lem]s affecting productivity, [Plaintiff] retains adequate mental ability to carry out instr[uctions] and to relate adequately to others in a routine work setting." (R. 782.)  The moderate limitations noted in Section I are not part of Dr. Zelenka's final functional capacity assessment and therefore do not constitute part of the mental functional capacity assessment of Plaintiff. Because these notations were not part of the MRFC, the ALJ  did not err in failing to include those limitations in Plaintiff's RFC.

---

[31] PROGRAM OPERATIONS MANUAL SYSTEM § DI 24510.060B2 (2010).

[32] Id. § DI 24510.060B4.

14

**B.      The ALJ Did Not Commit Error by Failing to Include the Two Moderate Limitations in the Hypothetical Questions Posed to the VE**

Plaintiff also contends that the ALJ failed to include in the hypothetical questions posed to the VE the two areas of moderate limitation, noted on section I of Dr. Zelenka's MRFC –  Plaintiff's alleged moderate inability to maintain attention and concentration for extended periods of time and her alleged moderate inability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.   Plaintiff contends that because the hypothetical questions do not adequately include all of Plaintiff's exertional and non-exertional impairments, the VE's testimony does not constitute substantial evidence and therefore is reversible error.

The ALJ is required to describe Plaintiff's educational level, age, work skills, experience, and all of Plaintiff's impairments when presenting a hypothetical question to a VE.[33] The Social Security Administration's regulations do not obligate an ALJ to use specific wording when describing Plaintiff's impairments in these hypotheticals so long as the question accurately reflects the claimant's RFC.  In order for a response to a hypothetical question to constitute substantial evidence of work available to the claimant, the question must set out all of the claimant's impairments.[34]  However, in posing a hypothetical question, the ALJ is not required to include findings the ALJ

---

[33]  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

[34]  Wilson v. Barnhart, 284 F3d.1219, 1227 (11th Cir. 2002).

properly rejects, nor must he accept the VE's responses to hypothetical questions that include unsupported allegations.[35]

At the hearing, the ALJ asked the VE the following hypothetical question:

Please assume that you are dealing with an individual who is the same age as the claimant, same educational background and past work experience as you identified.  Now further assume that this individual has the residual functional capacity for performing the exertional demands of light work with the following limitations.  All of the postural limitations, that's climb, balance, stoop, kneel, crouch and crawl only occasionally.  This individual I'm describing must also avoid hazards such as machinery and open heights.  So would that individual that I described be able to do any of the claimant's past relevant work as performed or as generally performed in the national economy?
. . . .

Okay.  Let me give you  - - let me - - I'm going to add to that hypothetical now.  This individual I'm describing can only now understand and remember and carry out simple instructions in addition to the other limitations that I provided to you.  So would that individual now be able to do the claimant's past relevant work as performed or as generally performed in the national economy?

(R. 927-28.)  In response to this hypothetical, the VE opined that such an individual would be capable of performing Plaintiff's past work history as well as work that exists in the national economy in significant numbers including, but not limited to, positions like auto salesperson,[36] sales manager,[37] and cashier/checker.[38]  (R. 927-29.)  Upon further questioning by the ALJ, the VE testified that an individual who possessed the additional non-exertional limitation that the individual could only understand and

---

[35] Wright v. Comm'r of Soc. Sec., 327 Fed. Appx. 135, 137 (11th Cir. 2009).

[36] DICTIONARY OF OCCUPATIONAL TITLES § 273.353-010 (4th ed. 1991).

[37] Id. § 163.167-018.

[38] Id. § 211.462-014.

remember and carry out simple instructions in addition to the other limitations provided

could still perform work that exists in the national economy in significant numbers

including, but not limited to, positions like cashier/checker.  (R. 928-29.)

The ALJ then went on to pose a second hypothetical to the VE:

Okay.  All right.  I'm going to give you another hypothetical here.  Please now that you're dealing with an individual, again, the same age as the claimant, same educational background, and past work experience.  And further assume now that this individual has a residual functional capacity for the performance of the [inaudible] sedentary work.  With again the same postural limitations that I gave you before and the same pushing and pulling with the bilateral upper extremities only on an occasional basis.  Again, avoiding concentrated exposure to hazards, but no mental limitations.  So would that individual be able to do that - - any of those past relevant work that the claimant performed?
. . . .
Could not.  And then could that individual be able to do any other jobs that exist in the national economy given those limitations?
. . . .
Okay.  Now if I added the limitation that the individual could only understand, remember and carry out simple instructions would that individual be able to do the job as the charge account clerk and call out operator and the cutter/paster?
. . . .
Okay.  Now, I have one final question for you now concerning - - if an individual could not wear a shoe on one foot, would the individual be able to do those jobs as the charge account clerk and call out operator and the cutter/paster?  Would that make any difference in the - -

(R. 928-30.)  In response to the ALJ's second hypothetical, the VE opined that such an

individual would be incapable of performing all of Plaintiff's prior work history, but that

such an individual could nevertheless still perform work that exists in the national

economy in significant numbers including, but not limited to, positions like charge

account clerk,[39] call out operator,[40] and cutter/paster press clippings.[41] (R. 929-30.)

Upon further questioning by the ALJ, the VE testified that an individual who, in addition

to the other limitations provided –  possessed additional non-exertional limitations that

the individual (i) could only understand, remember and carry out simple instructions and

(ii) also could not wear a shoe on one foot –  could still perform work that exists in the

national economy in significant numbers including but not limited to the following

positions: charge account clerk, call out operator, and cutter/paster press clippings.

The ALJ's RFC finding as to Plaintiff was as follows:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to perform
> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except
> she can climb, balance, stoop, kneel, crouch and crawl occasionally.  She
> can occasionally use her bilateral upper extremities for pushing and
> pulling.  She must avoid concentrated exposure to hazardous machinery
> and unprotected heights.  She can understand, remember and carry out
> simple instructions.  She is unable to wear a shoe on the right foot.

The ALJ accurately described all of Plaintiff's impairments as well as the Plaintiff's RFC

in the hypothetical questions that he posed to the VE. The hypothetical included all of

the relevant postural limitations, the avoidance of hazards like machinery and open

heights, the ability to understand and remember and carry out only simple instructions,

and the inability to wear a shoe on one foot.  Both hypotheticals also described an

individual who had the same age, educational background and past relevant work as

Plaintiff.  While, the ALJ's first hypothetical referred to light work and also did not

---

[39] Id. § 205.367-014.

[40] Id. § 237.367-014.

[41] Id. § 249.587-014.

include the limitation that the individual could not wear a shoe on one foot, the second hypothetical question correctly described an individual who was limited to sedentary work and included the limitation of only wearing a shoe on one foot, as well as all of the other limitations that the ALJ had noted in determining Plaintiff's RFC.

The ALJ was not, as Plaintiff contends, required to include Plaintiff's alleged moderate inability to maintain attention and concentration for extended periods of time and her alleged moderate inability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods in the hypothetical questions posed to the VE because those two limitations – as discussed above – were not reflected in Dr. Zelenka's assessment of Plaintiff's mental RFC.  Consequently, the ALJ's RFC finding was consistent with Dr. Zelenka's opinion as well as accurately reflected in the second hypothetical question posed to the VE.  Based upon the second hypothetical question, the VE properly concluded that, even despite Plaintiff's RFC and the limitations posed by that RFC, she is capable of performing work that exists in the national economy in significant numbers including but not limited to the positions of charge account clerk, call out operator and cutter/paster press clippings.

Accordingly, for these reasons, the Court concludes that the ALJ properly determined that Plaintiff was not disabled because - based upon the VE's testimony - there are jobs that exist in significant numbers in the national economy that a person with Plaintiff's assigned RFC could perform. The ALJ sufficiently considered all of the functional limitations resulting from Plaintiff's mental impairments—including the entirety of Dr. Zelenka's assessment—during his assessment of Plaintiff's RFC and the

19

hypotheticals posed to the VE were consistent with both Dr. Zelenka's opinion and the RFC. As such, Plaintiff has failed to identify any error by the ALJ.

## V.  <u>CONCLUSION</u>

In view of the foregoing, the decision of the Commissioner is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g)**.** The Clerk is directed to enter final judgment in favor of the Commissioner consistent with this Order and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 29, 2010.

GARY R. JONES
United States Magistrate Judge

Copies to:
      All Counsel